## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALEJANDRO ROCHE,

      Plaintiff,

v.                                                    Case No: 8:23-cv-1571-CEH-CPT

TECO ENERGY, INC. and TECO
ENERGY GROUP RETIREMENT
PLAN,

      Defendants.

_____

## <u>ORDER</u>

This matter comes before the Court on Defendants', TECO Energy, Inc., and TECO Energy Group Retirement Plan, Motion to Dismiss (Doc. 26), Plaintiff Alejandro Roche's response in opposition (Doc. 30), and Defendants' reply (Doc. 36).

In this putative class action, Plaintiff alleges that Defendants violated section 102 of the Employment Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA"), and breached their fiduciary duty under ERISA § 404, by failing to disclose material information in their pension plan's Summary Plan Description ("SPD"). Doc. 1. Defendants request dismissal with prejudice, arguing that ERISA does not require SPDs to disclose the information Plaintiff alleges was missing.

Upon review and full consideration, the Court will grant the motion to dismiss because there was no legal duty for the SPD to disclose the plan's method of calculating lump sum benefits.

## I.      BACKGROUND[1]

As an employee of Defendant TECO Energy, Inc. ("TECO") for approximately 33 years, Plaintiff Alejandro Roche participated in the TECO Energy Group Retirement Plan. Doc. 1 ¶¶ 6-8.   Under the plan, participants like Plaintiff who are "grandfathered" into a prior version are entitled to receive a pension in the form of a life annuity or a lump sum. Doc. 1 ¶¶ 16, 18-21.

On September 22, 2022, Plaintiff completed a retirement application indicating his last day of work would be December 2, 2022. *Id.* ¶¶ 26-27.   In response to his request for estimated pension benefits, TECO informed him that the amount of his lump sum benefit would depend on the date it was paid to him. *Id.* ¶¶ 28-32.   The estimated amounts were as follows:

    December 1, 2022: $482,970.55
    January 1, 2023:    $396, 600.67
    February 1, 2023:  $395,997.89

*Id.* ¶ 32.   Plaintiff requested that his retirement date be set to December 1, 2022, so that he would receive the largest lump sum. *Id.* ¶ 34.   However, TECO notified him that employees must complete the retirement application 90 days before the start of retirement benefits, which made a December 1 retirement date impossible. *Id.*[2]  As a

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion, and any documents attached to the pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] *See* Doc. 1-3 at 23 (in SPD, stating retirement applications must be submitted at least 90 days before the retirement date, which becomes effective on the first of the month).

result, Plaintiff received the significantly lower lump sum amount for January 2023. *Id.* ¶ 52.

As TECO explained in subsequent communications with Plaintiff, the lump sum amount is calculated using an interest rate that is taken from an interest rate and mortality table published by the IRS. *Id.* ¶¶ 38, 42, 44.  To select the interest rate that will be used, TECO "looks back" to the rate from August of the previous calendar year. *Id.* ¶¶ 40-42, 44.  There is an inverse relationship between interest rates and the amount of the lump sum benefit, such that a higher interest rate results in a smaller lump sum. *Id.* ¶ 50.  The lump sum benefits Plaintiff could receive in 2023 were lower than the lump sum benefits he could have received in 2022, because the August 2022 interest rate that was used to calculate the 2023 benefit was higher than the August 2021 interest rate that was used to calculate the 2022 amount. *See id.* ¶ 49-51.

Plaintiff contends that he would have submitted his retirement application in time for his lump sum to be calculated as payable in 2022 if he had known about the Plan's calculations methods. *Id.* ¶ 54.  He alleges that the Summary Plan Description failed to adequately inform him and other similarly situated individuals about the calculation methods and the consequence of rising interest rates, resulting in a substantial loss of benefits. *Id.* ¶ 52, 96-99.

With respect to the calculation of lump sum benefits for "grandfathered" participants like Plaintiff, the SPD states in its entirety:

**CALCULATION OF OPTIONAL FORMS OF PAYMENT**
Optional forms of payment…under the grandfathered formula, are
based on the interest rate and mortality table found in Internal
Revenue Code Section 417(e).

Doc. 1-3 at 17.  Internal Revenue Code § 417(e) does not itself contain an interest rate

and mortality table.  *See* 26 U.S.C. § 417(e).  It provides that the "present value" of a

lump sum benefit "shall not be less than the present value calculated using the

applicable mortality table and the applicable interest rate," which is defined with

reference to 26 U.S.C. § 430(h).  *Id.* §§ 417(e)(3)(A), (B-D).  In turn, 26 U.S.C. §

430(h)(2)(F) directs the Department of the Treasury to publish a table containing

monthly segment interest rates used to determine the present value of an employer

pension plan.  The table is available on the IRS website under the heading "Minimum

present value segment rates," with an introduction that references the interest rates in

26 U.S.C. § 417(e)(3).[3]

Plaintiff filed a putative class action on July 14, 2023. Doc. 1.[4]  He alleges that

Defendants violated ERISA § 102, which requires an SPD to "reasonably

apprise…participants of their rights and obligations" under a retirement plan,

including circumstances that may result in a loss of benefits. *Id.* ¶¶ 86-94, 96-99; 29

U.S.C. § 1022.  He also alleges that TECO breached its fiduciary duty under ERISA §

404 by providing participants with a materially defective SPD that caused a substantial

---

[3]  *See*   https://www.irs.gov/retirement-plans/minimum-present-value-segment-rates   (last
visited August 19, 2024).
[4] Plaintiff alleges that he exhausted his administrative remedies under ERISA. *See* Doc. 1 ¶¶
62-69.  Defendants do not challenge the exhaustion of administrative remedies.

loss of benefits. Doc. 1 ¶¶ 94-96.[5]  Plaintiff argues that the SPD should have explained: (i) that TECO would calculate pension lump sums by looking back to the section 417(e) segment rates for August of the previous year, and (ii) that a lump sum would be significantly reduced if interest rates were increasing the year before it was paid. *Id.* ¶ 96.

Defendants now move to dismiss the complaint with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6), arguing that neither ERISA § 102 nor § 404 imposes the disclosure requirements Plaintiff requests. Doc. 26.  They contend that an SPD is a mere summary of the Plan's terms that courts have held is not required to include information on every detail that might affect benefit calculations. *Id.* at 13-17.  Rather, it is meant to provide generalized information that is relevant to a wide range of situations. *Id.*  The absence from the detailed Department of Labor ("DOL") regulations of the information Plaintiff identifies implies it is not required. *Id.* at 17-18. Moreover, Plaintiff's interpretation would necessitate updating an SPD every time the IRS publishes the new applicable interest rate, even though ERISA only requires plans to be updated every five years. *Id.* at 18-20.  Defendants also argue that ERISA's

---

[5] Both of these distinct claims are asserted within the same count, rendering the complaint a shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015) (complaint that fails to separate "into a different count each cause of action or claim for relief" constitutes one general type of shotgun pleadings).  Because the Court concludes the motion to dismiss is due to be granted, it will not direct Plaintiff to correct the pleading defect. *Cf. Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (when faced with a shotgun pleading, a court should strike the complaint and instruct the plaintiff to file a more definite statement).

fiduciary duties do not include duty to disclose information beyond what ERISA requires. *Id.* at 20-22.

Responding in opposition, Plaintiff contends that the information he identified as missing—the inverse relationship between the lump sum and the interest rate used to calculate it, and the lookback methodology of calculation—are "circumstances" that may result in a "loss of benefits," which ERISA § 102 requires an SPD to disclose. Doc. 30 at 6-8, citing 29 U.S.C. § 1022(b). DOL regulations also prohibit SPDs from having the effect of failing to inform participants by minimizing or obfuscating any reductions in plan benefits. Doc. 30 at 6-7, citing 29 C.F.R. § 2520.102-2(b). The SPD omits the IRS website that publishes segment interest rates as well as any reference to segment rates or a lookback month, which Plaintiff argues deprived him of the information he needed to make an informed decision about when to retire. Doc. 30 at 9-10. Plaintiff cites two cases in which courts found that an SPD was required to explain the material aspects of how the plaintiff's pension benefits were calculated. *Id.* at 10-16. He also contests Defendants' claim that frequent updates to the SPD would be necessary, suggesting language that explains the methodology without reference to specific interest rates and includes an example that recounts his own situation. *Id.* at 16-17. Finally, Plaintiff argues that ERISA fiduciary duties are more expansive than the disclosure requirements specified within ERISA. *Id.* at 19-20.

In reply, Defendants criticize Plaintiff's sample language as hindsight-based and overly specific to individuals in Plaintiff's particular situation, which would be contrary to the utility of an SPD as a summary document. Doc. 36 at 2-3. In addition,

Defendants point out that lump sum benefits have been inversely tied to interest rates for years, including periods of volatility, but DOL regulations have never compelled disclosure of the information Plaintiff identifies. *Id.* at 3-4.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

### A. SPD Disclosures Under ERISA § 102

Under ERISA § 502(a), a participant in an employee benefit plan, including a pension plan, may bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate

equitable relief (i) to redress such violation or (ii) to enforce any provision" of ERISA. 29 U.S.C. § 1132(a)(3).

ERISA requires that plan administrators furnish a Summary Plan Description to participants and beneficiaries of employee benefit plans, including pension plans. *Id.* §§ 1021, 1022(a).  An SPD must "be written in a manner calculated to be understood by the average plan participant, and [must] be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under" their employee benefit plan. *Id.* § 1022(a).  This usually requires "the limitation or elimination of technical jargon and of long, complex sentences, the use of clarifying examples and illustrations, [and] the use of clear cross references and a table of contents." 29 C.F.R. § 2520.102-2(a).  An SPD cannot "have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries" about their plan, present the advantages and disadvantages of the plan "without either exaggerating the benefits or minimizing the limitations," and must not minimize or otherwise make to appear unimportant "[a]ny description of exception, limitations, reductions, and other restrictions of plan benefits." *Id.* § 2520.102-2(b).

ERISA § 102 lists the required contents of a pension benefit plan's SPD. 29 U.S.C. § 1022.  An SPD must include, in relevant part: administrator and trustee contact information, the plan's eligibility requirements, the procedure for making a claim for benefits and the remedies available to challenge the denial of a claim, the source of financing for the plan, and "circumstances which may result in disqualification, ineligibility, or denial of benefits." *Id.* § 1022(b).

The accompanying DOL regulations elaborate on the latter requirement: the SPD must include "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery…of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the [SPD's] description of benefits[.]" 29 C.F.R. § 2520.102-3(l).  The regulations also require SPDs to include, *inter alia*:

- A description or summary of the plan benefits. *Id.* § 2520.102-3(j)(1).

- Details regarding the hypothetical termination of the plan or amendment or elimination of benefits. *Id.* § 2520.102-3(l).

- A description of the plan's normal retirement age and any other conditions that must be met before a participant will be eligible to receive benefits. *Id.* § 2520.102-3(j)(1).

- A description and explanation of the plan provisions for determining years of service for eligibility to participate, vesting, and breaks in service, and years of participation benefit accrual. *Id.* § 2520.102-3(n).

- The sources of contributions to the plan, and the method by which the amount of contribution is calculated. *Id.* § 2520.102-3(p).

An SPD is a "critical feature of the ERISA regulatory scheme because it 'simplifies and explains a voluminous and complex document' to plan participants and beneficiaries.'" *Heffner v. Blue Cross and Blue Shield of Ala., Inc.*, 43 F.3d 1330, 1341 (11th Cir. 2006), quoting *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985) (modifications accepted).  For this reason, however, it "does not

necessarily contain all of the information about a plan." *Heffner*, 443 F.3d at 1341.  As

Judge Posner observed,

> The law is clear that the plan summary is not required to anticipate
> every possible idiosyncratic contingency that might affect a
> particular participant's or beneficiary's status. … If it were, the
> summaries would be choked with detail and hopelessly confusing.
> Clarity and completeness are competing goods.

*Lorenzen v. Emps. Ret. Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir.

1990) (citations omitted).  The Ninth Circuit has explained that an SPD must "provide

information about the general circumstances in which benefits could be lost," in a

manner that is "specific enough to enable the ordinary employee to sense when there

is a danger that benefits could be lost or diminished," but it "need not discuss every

imaginable situation in which such events or actions might occur." *Stahl v. Tony's Bldg.*

*Materials, Inc.*, 875 F.2d 1404, 1408 (9th Cir. 1989).

Cases discussing the adequacy of disclosures under an SPD often highlight the

requirement that it "clearly identify[] circumstances which may result in…loss…of any

benefits that a participant or beneficiary might otherwise reasonably expect the plan to

provide[.]" 29 C.F.R. § 2520.102-3(l).  In *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d

5, 9-10 (2d Cir. 1997), for example, an SPD's failure to clearly warn participants that

they would lose vested retirement benefits if they elected to retire but died before the

effective date of retirement supported a claim for breach of fiduciary duty, because it

was a circumstance that resulted in a clear loss of benefits.  Similarly, in *Wilkins v.*

*Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 584 (2d Cir. 2006), an SPD

was found inadequate where it did not include a policy requiring participants to

produce proof of covered employment as a condition of receiving benefits to which they were entitled; those participants would lose their benefits if they did not know to save the required documentation.

On the other hand, an SPD's description of circumstances that might lead to a loss of benefits need not detail every plaintiff's specific plight.  In *Stahl v. Tony's Bldg. Materials*, 875 F.2d at 1407, the SPD warned participants that coverage under a collective bargaining agreement was a condition of their participation in the plan, and that they could lose some of their benefits if their employer stopped making contributions to the fund.  Contrary to the plaintiffs' argument, the court found that the SPD did not need to expressly state that employers are especially likely to fail to make contributions after the expiration of a collective bargaining agreement, and employees who continue to work instead of retiring at that time, as the plaintiffs did, risk losing benefits. *Id.*  Such an explanation would constitute the provision of "specific advice to employees on how to shape their conduct to fit the rules," which an SPD is not required to do. *Id.* at 1407-08.

### B.  Defendants' SPD Was Not Deficient Under ERISA § 102

Plaintiff asserts that Defendants' SPD was required to disclose the plan's specific method for calculating lump sum benefits, including the lookback month and the inverse relationship between interest rates and benefits.  However, the Court concludes that the failure to include this information did not have the effect of failing to inform participants about their benefits. And the plan's method of calculating lump sum benefits is not a circumstance that might lead to a loss of benefits that participants

might otherwise expect the plan to provide.  Accordingly, the SPD was not deficient under ERISA § 102.

First, it is significant that neither ERISA nor its implementing regulations expressly require an SPD to disclose the plan's method of calculation of lump sum benefits or other distributions among the other listed disclosures.  The regulations require an SPD to disclose a plan's method of calculating contributions and periods of service, *see* 29 C.F.R. §§ 2520.102-3(n), (p)—but they are silent as to a plan's method of calculating distributions.[6]  Yet, of course, every plan must employ such a method. In fact, 26 C.F.R. § 1.417(e)–1(d)(4) obligates every plan to select a lookback month and stability period.  The fact that the regulations do not explicitly require an SPD to disclose the chosen lookback month or other details about the method of calculating benefits is a powerful indication that ERISA's disclosure rules do not encompass this information. *See Cornelius v. Dykema Gossett PLLC Ret. Plan*, No. 11-13186, 2012 WL 6193861, *2-3 (E.D. Mich. Dec. 12, 2012) (concluding an SPD need not describe the method of converting part-time compensation to a full-time equivalent for the purpose of calculating benefits, because the statute and regulations do not list a description of the methodology of calculating benefits within the required contents of an SPD), *aff'd,*

---

[6] In contrast, when a pension plan is amended ERISA requires the plan administrator to provide notice that includes "sufficient information for each applicable individual to determine the approximate magnitude of the expected reduction for that individual." *See* 28 U.S.C. § 1054(h) *and* 26 C.F.R. § 54.4980F-1, A-11(a)(4)(i)(A). Absent an amendment, however, there is no comparable requirement that an SPD provide enough information for a participant to calculate their own expected lump sum benefit.

No. 14-1490, 2015 WL 13927283, *3 (6th Cir. Feb. 17, 2015); *see also In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1355 (S.D. Fla. 2001) ("The argument that [Defendant's cost containment practices, including cost-based criteria and financial incentives] should be listed with specificity [in the SPD] is belied by the statute's and regulations' silence on cost containment practices.").

For the same reason, the absence of cases finding an ERISA notice violation where an SPD failed to specify the lookback month is telling.  Plaintiff has not identified, nor has the Court located, any cases holding that an SPD must disclose the plan's chosen lookback month.

Similarly, the inverse relationship between interest rates and lump sum distributions is an actuarial fact that is not specific to Defendants' pension plan. *See*, *e.g.*, *Stepnowski v. C.I.R.*, 456 F.3d 320, 322 (3d Cir. 2006) (explaining the relationship). If the SPD for every plan that permits lump sum distributions were required to explain that relationship to participants, such a requirement is unlikely to be absent from the statute, the implementing regulations, and the caselaw.  Plaintiff's theory is therefore novel, as well as wide-reaching. *See also McCarthy v. Dun & Bradstreet Corp.*, No. Civ.A.3:03CV431, 2004 WL 2743569, *5 (D. Conn. Nov. 30, 2004) ("No case has ever held that a mere failure to include the specific methodology used to calculate a benefit is an ERISA violation.").

Plaintiff relies on two cases in support of his argument that an SPD must disclose the specific method of calculation.  He first cites *Frommert v. Conkright*, 738 F.3d 522 (2d Cir. 2013), for the proposition that "SPDs *must* explain the material

aspects of how the pensions are calculated under the plans they summarize." Doc. 30 at 12 (emphasis in original). In *Frommert*, the court found that the SPD at issue was insufficiently comprehensive where it "fail[ed] to describe the mechanics" of an offset of benefits, including the applicable interest rate that would be used to calculate it. 738 F.3d at 532. However, the *Frommert* court expressly "decline[d] to make…a blanket rule" that an SPD "'invariably must describe the method of calculating an actuarial reduction[.]'" *Id.* at 533, quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 197 (2d Cir. 2007). The court cautioned that its conclusion was "limited to the specific components and mechanics of" the plan before it, and "plainly does not create the 'blanket requirement'" it had previously declined to adopt. 738 F.3d at 533.

The "specific components and mechanics" of the plan and the plaintiffs' loss in *Frommert* and the second case on which Plaintiff relies are distinguishable from Plaintiff's allegations here. In *Frommert*, the plan provided that the accrued benefits of participants who had left the company, received a distribution at that time, and were later rehired, would be offset by the accrued benefits attributable to their past distribution. *Id.* at 532. The offset placed those participants in a worse position than comparable employees who had not worked at the company before. *Id.* at 530. But the SPD stated only that the amount such a beneficiary received "may be reduced." *Id.* at 532. Accordingly, the court held that the SPD failed to clearly identify a circumstance that would result in an offset, *see* 29 C.F.R. § 2520.102-3(l), that it was insufficiently accurate and comprehensive to reasonably apprise participants of their rights and obligations under the plan, *see* 29 U.S.C. § 1022(a), and that it failed to

explain the "full import" of the offset provision, *see Layaou v. Xerox Corp.*, 238 F.3d 205, 211 (2d Cir. 2001) (citations omitted). *Frommert*, 738 F.3d at 532.

The second case on which Plaintiff relies is *Nolan v. Detroit Edison Co.*, 991 F.3d 697 (6th Cir. 2021).  *Nolan*, like many other ERISA disclosure disputes,[7] arose in connection with the defendant's transition from a traditional pension plan to a cash balance plan.  This transition "tends to involve 'wear away,' which occurs when an employee continues to work at a company but does not receive additional benefits for those additional years of service." *Id.* at 701 (quotation omitted).  Wear away happens because a beneficiary's existing pension entitlement does not grow after a conversion to a cash balance plan until—or unless—the beneficiary accrues enough credits under the new plan to exceed the existing pension's value. *Id.*  In fact, the existing entitlement may even *decrease* in this scenario if interest rates fall between the time of the conversion and the participant's retirement. *Id.* at 707.  The detrimental impacts of switching to a cash balance plan were not always adequately disclosed to participants. *Id.* at 701.

In *Nolan*, the materials provided to plan participants regarding the transition to a cash balance plan not only failed to inform them that their existing pension entitlement would remain stagnant, but created the misleading impression that they would also earn new benefits, causing their total benefits to increase each year. *Id.* at 712-13.  In addition, the materials failed to disclose the risk that the existing

---

[7] *See, e.g., Osberg v. Foot Locker*, 862 F.3d 198 (2d Cir. 2017); *Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014); *Jensen v. Solvay Chemicals, Inc.*, 625 F.3d 641 (10th Cir. 2010).

entitlement would decrease with falling interest rates, falsely describing the existing entitlement as "frozen and protected." *Id.* at 713.  The court held that the pitfalls of switching to the cash balance plan were not adequately conveyed by the materials' vague statement that benefits depend "on the retirement program you choose," including "changes in your pay, years of service, and changes in the interest rates." *Id.* at 713-14.  As a result, the *Nolan* plaintiff stated a claim for an ERISA disclosure violation under § 102. *Id.* at 715.

Here, unlike in *Frommert* and *Nolan*, Plaintiff does not allege that any provision of the SPD was inaccurate or misleading. *See*  29 C.F.R. § 2520.102-2(b) ("[a]ny description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure, or otherwise made to appear unimportant.").  Moreover, Defendant's plan does not provide for a mandatory offset of benefits that was not disclosed, as in *Frommert*, and participants were not persuaded to convert their plan to an unfavorable version that would put them in a far worse position, as in *Nolan*.  Neither case suggests that an SPD that does not disclose its method of calculating benefits for the average participant must be found deficient.

The plaintiffs' situations in *Frommert* and *Nolan* fall neatly within ERISA's description of "circumstance[] which may result [in...] a denial or loss of benefits" pursuant to 29 U.S.C. § 1022(b): 1) individuals who left the company, received a distribution, were rehired, and then were subject to a mandatory offset that placed them in a worse position than comparable employees who had not previously worked for the company (*Frommert*); and 2) individuals who accepted the company's offer to

convert to a cash balance plan when they had fewer years left until retirement than they had already worked at the company, rendering them ineligible to earn additional benefits and at risk of losing the ones they had already earned (*Nolan*).  Both situations are plainly circumstances that would result in a loss of the plaintiffs' benefits, which therefore had to be disclosed. *See also Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 9-10 (2d Cir. 1997) *and Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 584 (2d Cir. 2006), *supra* at Section III(A).

Here, however, contrary to Plaintiff's arguments, Doc. 30 at 7-8, the Court is unconvinced that Plaintiff "lost" benefits because of comparable circumstances.  It is true that he retired in a year in which his lump sum benefit was lower than it would have been if he had retired in 2022.  But he had no reason to expect to receive the amount he would have collected if he had retired in 2022.[8]  The DOL regulations specify that an SPD must disclose only the "circumstances which may result in…loss [or] reduction…of any benefits that a participant or beneficiary *might otherwise reasonably expect the plan to provide* on the basis of the [SPD's] description of benefits[.]" 29 C.F.R. § 2520.102-3(l) (emphasis added).  Plaintiff does not allege that the SPD led him to believe that he would receive a higher sum or that he would be entitled to have his lump sum benefit calculated using a more favorable interest rate.  Rather, he contends that the SPD should have contained enough information to allow him to do

---

[8] Nor could Plaintiff have reasonably expected to retire in 2022 after submitting his retirement application on September 26, 2022, as the SPD states that retirement will be effective on the first day of the month following 90 days after the retirement application is received. Doc. 1-3 at 23.

his own calculation so that he could select the retirement month that would lead him to receive the highest lump sum. Doc. 1 ¶ 54.[9] But not having that information did not result in a loss or reduction of benefits he might otherwise reasonably expect to receive.

Neither the legislature, the Department of Labor, nor the courts have opted to require SPDs to explain a plan's method of calculating benefits. Plaintiff's suggestion of the language Defendants' SPD should have contained to anticipate his particular situation, *see* Doc. 30 at 17, constitutes the provision of "specific advice to employees on how to shape their conduct to fit the rules," which an SPD is not required to do. *Stahl*, 875 F.2d at 1407-08; *see also Lorenzen*, 896 F.2d at 236 (an SPD need not "anticipate every possible idiosyncratic contingency that might affect a particular participant's…status"). ERISA § 102 does not require the SPD to contain the details of the plan's method of calculating lump sum benefits. Accordingly, the claim under ERISA § 102 is due to be dismissed. Because amendment would be futile, the dismissal is with prejudice.

---

[9] In his response in opposition, Plaintiff asserts that it was "impossible for [him] to make an informed decision as to when to retire" because Defendants did not disclose the plan's lookback methodology in the SPD. Doc. 30 at 5. The complaint and its exhibits belie that assertion. The SPD is just one of several resources available to plan participants, including an online Pension Calculator, *see* Doc. 1-3 at 8, and TECO's Human Resources department, which provided Plaintiff with estimated benefits for three different retirement months upon his request as well as an explanation of the lookback methodology. *See* Docs. 1-5, 1-7. An SPD is a "summary" document that need only be "sufficiently accurate and comprehensive to reasonably apprise such…participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). It "does not necessarily contain all of the information about a plan." *Heffner*, 43 F.3d at 1341. Requiring participants to avail themselves of resources other than the SPD to answer individualized, detailed questions is neither unreasonable nor inconsistent with ERISA.

**C. Defendants' SPD Did Not Breach Their Fiduciary Duty**

Plaintiff also alleges that Defendants' failure to include the method of calculating lump sum benefits in the SPD breached the fiduciary duty they owed him under ERISA § 404(a). Doc. 1 ¶¶ 94-95.  Under this provision, as well, the Court concludes the SPD was not inadequate.

ERISA creates a fiduciary duty owed by administrators of employee benefit plans to participants and beneficiaries. *See* 29 U.S.C. § 1104.  The fiduciary duty requires administrators of employee benefit plans to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries…for the exclusive purpose of providing benefits to participants and their beneficiaries[,] and defraying reasonable expenses of administering the plan." *Id.* § 1104(a).

"ERISA requires a 'fiduciary' to discharge his obligations with respect to a plan solely in the interest of the participants and beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996).  ERISA's fiduciary duties "draw much of their content from the common law of trusts." *Id.* at 496.  Under the common law, "a fiduciary has a fundamental duty to furnish information to a beneficiary[, which] entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Glaziers & Glassworkers Union Loc. No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1180 (3d Cir. 1996) (quotation omitted); *see also id.* at 1182 ("[A] fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the

beneficiary, which the beneficiary must know for its own protection.").  Indeed, the "duty to disclose material information is the core of a fiduciary's responsibility." *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990).  Accordingly, the Eleventh Circuit has acknowledged that "an ERISA plan administrator's withholding of information may give rise to a cause of action for breach of fiduciary duty." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004), citing *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1016 n.10 (11th Cir. 2003).

Moreover, "circumstances known to the fiduciary can give rise to [an] affirmative obligation [to disclose information] even absent a request by the beneficiary." *Glaziers*, 93 F.3d at 1181.  However, this affirmative duty to inform arises only "if there was some particular reason that the fiduciary should have known that his failure to convey the information would be harmful"—where the fiduciary "'knew of the confusion detrimental to the participant generated by its misrepresentations or its silence.'" *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 114-15 (1st Cir. 2002), quoting *UAW v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999) (modifications accepted).

For example, an ERISA fiduciary "that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent[.]" *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001) (employer breached fiduciary duty where it provided information to participants that implied that a rollover of benefits would be tax-free, but later learned this was incorrect and did nothing to warn affected employees).  As

another example, "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire." *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (employer breached fiduciary duty where permanently-disabled plaintiff lost the opportunity to secure long-term disability benefits because employer did not notify her about their availability despite husband's general requests for information about disability benefits for her).

Here, Plaintiff does not allege that Defendants failed to provide information in response to a request.  He also does not allege that they made any statements or omissions that were misleading,[10] or that Defendants knew he or anyone similarly

---

[10] The cases on which Plaintiff relies largely fall into this category. *See* Doc. 30 at 19-20, citing *Jordan v. Federal Exp. Corp.*, 116 F.3d 1005, 1015-17 (3d Cir. 1997) (a letter's failure to inform participants that benefits elections were irrevocable once the participant retired was a material omission, despite plaintiff's failure to inquire about it, because the elections had been revocable before retirement, and same letter explained that a different type of benefit was still revocable); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 469 (7th Cir. 2010) (defendant encouraged plan participants to call its customer service line with coverage questions but did not warn them they could not rely on the advice given by the customer service line, and did not volunteer information about a method of obtaining binding answers to coverage questions).

*Glaziers & Glassworkers Union Loc. Annuity Fund v. Newbridge Securities, Inc.*, 93 F.3d 1171 (3d Cir. 1996), falls into its own category that is equally inapposite.  In *Glaziers*, the defendant discharged an employee after it learned information suggesting the employee was of questionable integrity. *Id.* at 1175-76.  Assuming the defendant had a fiduciary relationship with the plaintiffs, the court found that there was a genuine dispute of material fact as to whether the defendant's failure to disclose the circumstances of the employee's termination constituted a breach of fiduciary duty, where the defendant knew the plaintiffs were placing their assets under the employee's control. *Id.* at 1180-82.

situated to him was under a material misimpression about the plan or their benefits. Nor does he allege that Defendants knew or should have known about any "confusion" likely to be detrimental to him that was generated by Defendants' failure to announce its calculation methods in the SPD. *See Watson*, 298 F.3d at 115.

Instead, Plaintiff alleges only that Defendants' fiduciary duty to plan participants required them to disclose the plan's method of calculating lump sum benefits in the SPD. Doc. 1 ¶¶ 94-96.  The Court is unconvinced that ERISA imposes a blanket fiduciary duty to include in the SPD information that the Court has already concluded is not required by ERISA's disclosure provisions. *See*, *e.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 406 (6th Cir. 1998) ("We are not aware of any court of appeals decision imposing fiduciary liability for a failure to disclose information that is not required to be disclosed."); *Anderson v. Resolution Trust Corp.*, 66 F.3d 956, 960 (8th Cir. 1995) ("Because we have already decided [defendant's] failure to disclose the suspension of benefit accruals was lawful under the applicable ERISA notice provision, the failure to disclose cannot be a breach of fiduciary duty."); *Haviland v. Metro. Life Ins. Co.*, 876 F.Supp.2d 946, 962 (E.D. Mich. 2012) ("[P]laintiffs cannot invoke ERISA fiduciary duties to enhance ERISA's disclosure requirements."), *aff'd*, 730 F.3d 563 (6th Cir. 2013); *DiFelice v. U.S. Airways, Inc.*, 397 F.Supp.2d 758, 769-70 (E.D. Va. 2005) (collecting cases and observing, "[g]iven the specificity of ERISA's

reporting requirements…courts generally have declined to read other ERISA provisions as creating obligations to provide further disclosure.").[11]

Absent any allegations of misrepresentations or misleading communications by Defendants, or communications between Plaintiff and Defendants that put Defendants on notice that Plaintiff misunderstood the terms of his benefits, Plaintiff does not state a claim for breach of fiduciary duty based on the failure to disclose the plan's method of calculating lump sum benefits in the SPD.  The claim under ERISA § 404 is due to be dismissed as well.  For this claim, however, the Court cannot conclude that the defect is incurable.  The dismissal of the breach of fiduciary duty claim will therefore be without prejudice.

Accordingly, it is **ORDERED**:

1. Defendants TECO Energy, Inc., and TECO Energy Group Retirement Plan's Motion to Dismiss (Doc. 26) is GRANTED.

2. The claim under ERISA § 102 is dismissed with prejudice.  The claim of breach of fiduciary duty is dismissed without prejudice.

3. To the extent Plaintiff intends to file an Amended Complaint asserting an amended breach of fiduciary duty claim, he may do so within FOURTEEN

---

[11] In his response in opposition, Plaintiff attempts to distinguish *Sprague* on the basis that it concerned an ERISA welfare plan rather than an ERISA pension plan. Doc. 30 at 18-19.  But Plaintiff does not explain why that distinction is material to the general proposition in its holding, nor address why other courts, including *Anderson*, have reached the same conclusion in cases concerning pension plans.  And Plaintiff himself cites *Varity Corp. v. Howe*, 516 U.S. 489, and *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452 (7th Cir. 2010), which concerned welfare benefit plans rather than pension plans. *See* Doc. 30 at 19-20.

(14) DAYS of the date of this Order.  The failure to file an Amended Complaint that corrects the defects identified in this Order within the time provided will result in dismissal of this action, with prejudice, without further notice.

**DONE** and **ORDERED** in Tampa, Florida on August 28, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties