**United States District Court**
**Middle District of Florida**
**Tampa Division**

Alejandro Roche, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

TECO Energy, Inc. and
TECO Energy Group Retirement Plan,

      Defendants.

Case No. 8:23-cv-01571
Hon. Charlene Edwards Honeywell
Mag. Christopher P. Tuite

_____

### PLAINTIFF ALEJANDRO ROCHE'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Alejandro Roche ("Alex" or "Roche"), by and through his attorneys,

brings this First Amended Class Action Complaint on behalf of himself and all others

similarly situated against TECO Energy, Inc. ("TECO") and the TECO Energy Group

Retirement Plan ("Plan").

### Jurisdiction and Venue

1.      This Court has jurisdiction over the parties pursuant to §502(a), (e), and

(f) of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §1132(a),

(e), and (f).

2.      Subject matter jurisdiction exists pursuant to 29 U.S.C. §1132(e)(1).

1

3.      Venue is proper pursuant to 29 U.S.C. §1132(e)(2).

## Nature of the Dispute

4.      This dispute concerns TECO's failure to notify Roche and the other putative class members in 2022 that, due to rising interest rates, if they retired and took their pension lump sums in 2023 rather than in 2022, their lump sums would be substantially smaller.

5.      In Roche's case, this failure caused Roche to lose over $82,000 in lump sum pension benefits between December 1, 2022 and January 1, 2023--the date of his lump sum distribution.

6.      Roche seeks to recover for himself and all others similarly situated the losses to their lump sum pension benefits caused by TECO's failure to issue such notice, which failure violated TECO's fiduciary duties under ERISA §404(a).

## The Parties

Roche

7.      Roche worked for TECO (or one of its predecessors) for nearly 33 years --from March 1990 until December 2, 2022 (his last day of work for TECO).

8.      Roche's position on his last day of work was Gas Design Project Manager, which required him to design and obtain permits and approvals for gas pipe lines.

2

9.    At all relevant times, Roche was a "Member" of the Plan (as that term is defined in the Plan) and a "participant" in the Plan (as that term is defined in ERISA). Plan §2.12, p3 (Ex. 1); 29 U.S.C. §1002(7).

TECO

10.    TECO is an energy-related holding company based in Tampa, Florida.

11.    While not publicly traded, it is reported that in 2023 TECO had 3,713 employees, annual revenue of $2.7 billion, and revenue per employee of $738,890. See https://www.zippia.com/teco-energy-careers-40584/revenue/ (last visited September 11, 2024).

12.    Per Article XIII of the Plan, TECO is the "sponsor" and "administrator" of the Plan as those terms are defined in ERISA.  Plan §13.1, p76 (Ex.1); Summary Plan Description (SPD) p25 (Ex. 2); 29 U.S.C. §1002(16).

13.    TECO is also a "named fiduciary" under the Plan and charged with "control[ing] and manag[ing]" the Plan, which makes TECO a fiduciary under ERISA, as well.  Plan §13.1, p76 (Ex. 1); 29 U.S.C. §1002(21)(A).

14.    Among TECO's listed "responsibilities" as a named fiduciary under the Plan is to perform those "duties" required "by law."  Plan §13.4, p77 (Ex. 1).

15.    Pertinent to this dispute, ERISA §404(a) imposes a "Prudent man standard of care" over ERISA fiduciaries and mandates that they "discharge their duties with respect to a plan solely in the interest of the participants and

3

beneficiaries" and--

> (A) for the exclusive purpose of providing benefits to participants and their beneficiaries; [and]

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

29 U.S.C. §1104(a).

16.    As explained later in this Amended Complaint, TECO violated each of these ERISA fiduciary duties.

Plan

17.    The Plan was established in 1985, amended and restated several times thereafter, most recently as of January 1, 2017, and expressly states that it intends to comply and be interpreted in accordance with ERISA.  Plan §§1.1 and 1.2, p1 (Ex. 1).

18.    Since July 1, 2001 (the "Adoption Date") the Plan has included two formulas for computing a participant's pension, one for participants who were younger than age 40 as of the Adoption Date (the "Younger Participants") and the other for participants who participated in the Plan before the Adoption Date and were age 40 or older on that date (the "Grandfathered Participants").  The SPD refers to these older participants as the "grandfathered group" or "grandfathered participants." SPD p2 (Ex. 2).

19.   Roche is a Grandfathered Participant.

20.   Because the formula for computing Grandfathered Participants' pensions considers the formula for computing Younger Participants' pensions (*see* ¶22), Roche briefly addresses both formulas.

21.   To determine Younger Participants' pensions, the Plan uses a "pension equity" formula that calculates a lump sum based on the Participant's age and years of service and then converts that lump sum to a life annuity--the "standard" or "normal" form of payment under the Plan. Plan §5.1(b)(i) and §6.1(a) pp10-13, 24-25 (Ex. 1); SPD pp12-14 (Ex. 2).

22.   For Grandfathered Participants, the pension is the larger of (i) the life annuity computed under the pension equity formula and (ii) the life annuity computed under the "prior plan" formula in effect before the Adoption Date.  Plan §5.1(b)(ii), pp13-14 (Ex. 1); SPD pp2-3, 6-8 (Ex. 2).

23.   For all Grandfathered Participants, the life annuity calculated under the "prior plan" formula is the larger of the two annuity benefits.

24.   Further, the annuity calculated under the prior plan formula is the "standard" or "normal" form of pension payable to Grandfathered Participants.  Plan §6.1(a) pp 24-25 (Ex. 1); SPD pp 6, 14 (Ex. 2).

25.   Grandfathered Participants may, however, elect to receive their annuity in the form of a lump sum.  Plan §6.2 pp27-28) (Ex. 1); SPD pp2, 14-15 (Ex. 2).

26.    Roche and the putative class members elected to take their Grandfathered pension (the life annuity) in the form of a lump sum.

27.    This dispute concerns TECO's knowing failure to warn grandfathered participants in 2022 that, due to increasing interest rates, if they retired and took a lump sum in 2023 rather than 2022, their lump sum would be substantially smaller.

28.    <u>In Roche's case, the difference between his lump sum if paid in December 2022 versus the lump sum he received in January 2023 was over $82,000</u>.

29.    Other Grandfathered Participants who took their lump sums in 2023 also lost substantial dollars.  *See* Declaration of Ellen Kleinstuber [Roche's actuary] (Ex. 3 at p12) (showing losses ranging from a low of 12.2% to a high of 21.4% or an average loss of 16.22%).[1]

---

[1] Kleinstuber's Declaration was submitted in support of Roche's motion for class certification (Doc 46-11).  The last page (p12) shows her calculations for ten of the putative class members.

**General Allegations**

30.    Several months before his 65th birthday (8/26/2022), Roche informed his supervisor that he would retire soon after turning age 65.

31.    Thereafter, on September 22, 2022, Roche completed a TECO Retirement Application, had his supervisor sign it on September 26, 2022, and, per the instructions in the Application, emailed it on that date to TECO's "Total Rewards Retirement Team" at Retirement@tecoenergy.com.  Ex. 4.

32.    As noted in the Application, Roche selected December 2, 2022 as his last day of work for TECO.  *Id.*

33.    Roche subsequently received three letters from TECO Energy Pension Services, each dated September 27, 2022 and attaching a chart showing his estimated pension benefits under various annuity options and a lump sum option.  Ex. 5.

34.    The letters were prompted by Roche's request approximately two weeks earlier for pension estimate information.

35.    The first benefit estimate assumed Roche's pension would be paid December 1, 2022; the second assumed Roche's pension would be paid January 1, 2023; and the third assumed Roche's pension would be paid February 1, 2023.  Ex. 5.

36.    While the annuity amounts changed little from one month to the next, the lump sum amounts changed drastically between December 1, 2022 and January 1,

2023.

37.     For the December 1, 2022 payment date, the lump sum was estimated to equal **$482,970.55**; for the January 1, 2023 payment date, it was estimated to equal **$396,600.67**; and for the February 1, 2023 payment date, it was estimated to equal **$395,997.89**.  Ex. 5.

38.     Naturally, Roche was baffled by the lump sum decrease of over $86,000 in the course of one month between December 1, 2022 and January 1, 2023, especially since he had received no information whatsoever from TECO warning him that if he took his lump sum in 2023 rather than in 2022 it would be substantially smaller.

39.     Accordingly, and as evidenced by the following email exchanges between Roche and TECO pension representative Stacy Stromsnes, Roche requested (i) the methodology used to calculate his lump sum, and (ii) that his retirement date be set for December 1, 2022 since that would clearly provide him the largest lump sum.  In response, Stromsnes informed Roche that his request was tardy because "leadership" had decided that "team members must complete the retirement application 90 days prior to the start of retirement benefits":

> *10/26/22 2:54 pm Email from Roche to Stacey Stromsnes*
>
> Good afternoon, Stacy

8

I wanted to follow up on my request to move up my retirement date from 1-1-2023 to 12-1-2022 because of the considerable difference in the lump sum estimates provided to me. That estimates were provided after I submitted the initial retirement paperwork at the end of September. My request to move up the date was initiated with Paige and she forwarded it to management for consideration. Paige has informed me the request would not meet the cut-off date, and therefore, the retirement date could not be moved up. I understand the Company requires 90 days notice of retirement, but can you briefly provide the parameters that prevent the company from accelerating the retirement date given the reason for my request?

Respectfully

Alex Roche

*10/27/2022 12:39 pm Email from Stacey Stromsnes to Roche*

Hi Alex,
Thank you for reaching out.
Your situation was escalated to leadership and the decision was made that team members must complete the retirement application 90 days prior to the start of retirement benefits.

I can share that setting someone up for retirement is an intricate and timely process to ensure that pension, healthcare, and life insurance benefits are all in place for the requested retirement date.

We understand this is a sensitive situation.

Please let us know if you have additional questions.

Stacey

9

*10/27/2022 1:00 pm Email from Roche to Stacey Stromsnes*

Hi Stacey

Thank you for the explanation. It is a bit disappointing to discover the consideration with the payout differences based on projected interest rates around the end of the year could greatly affect the lump sum amounts. I don't imagine its something that potential retirees know to consider when determining the retirement date.

Regards,

Alex

Ex. 6 (10/26/2022 & 10/27/2022 emails between Roche and Stacey Stromsnes).

40.   On November 18, 2022, in response to Roche's request for an explanation as to how his estimated pension lump sums were calculated, Deirdre Gilmore, a TECO Senior Retirement Analyst, sent Roche an email attaching page 17 of the SPD and advising that, per that page, "the basis for the lump sum calculation" was "IRS Code Section 417(e)." *See* Ex. 7 (11/2022 through 12/2022 email exchanges between Roche and Gilmore).

41.   The part of page 17 of the SPD that references Code §417(e) reads <u>in its entirety</u> as follows:

> **CALCULATION OF OPTIONAL FORMS OF PAYMENT**
>
> Optional forms of payment under the current formula, and effective January 1, 2017, under the grandfathered formula, are based on the interest rate and mortality table found in Internal Revenue Code Section 417(e).

SPD p17 (Ex. 2).

42.     This language in the SPD does not identify any specific interest rate or mortality table for computing pension lump sums, much less quote Code §417(e) or tell participants how to find the statute.

43.     The quoted language from page 17 of the SPD merely states that lump sums are "based on" an interest rate and mortality table "found" in Code §417(e), but no interest rate or mortality table appears in Code §417(e) which reads in full as follows:

> **(e) Restrictions on cash-outs.**
> **(1) Plan may require distribution if present value not in excess of dollar limit.**
> A plan may provide that the present value of a qualified joint and survivor annuity or a qualified preretirement survivor annuity will be immediately distributed if such value does not exceed the amount that can be distributed without the participant's consent under section 411(a)(11). No distribution may be made under the preceding sentence after the annuity starting date unless the participant and the spouse of the participant (or where the participant has died, the surviving spouse) consents in writing to such distribution.

**(2) Plan may distribute benefit in excess of dollar limit only with consent.** If--

> **(A)** the present value of the qualified joint and survivor annuity or the qualified preretirement survivor annuity exceeds the amount that can be distributed without the participant's consent under section 411(a)(11), and
>
> **(B)** the participant and the spouse of the participant (or where the participant has died, the surviving spouse) consent in writing to the distribution,

the plan may immediately distribute the present value of such annuity.

**(3) Determination of present value.__**

> **(A) In general.** For purposes of paragraphs (1) and (2), the present value shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate.
>
> **(B) Applicable mortality table.** For purposes of subparagraph (A), the term "applicable mortality table" means a mortality table, modified as appropriate by the Secretary, based on the mortality table specified for the plan year under subparagraph (A) of section 430(h)(3) (without regard to subparagraph (C) or (D) of such section).
>
> **(C) Applicable interest rate.** For purposes of subparagraph (A), the term "applicable interest rate" means the adjusted first, second, and third segment rates applied under rules similar to the rules of section 430(h)(2)(C) (determined by not taking into account any adjustment under clause (iv) thereof) for the month before the date of the distribution or such other time as the Secretary may by regulations prescribe.
>
> **(D) Applicable segment rates.** For purposes of subparagraph (C), the adjusted first, second, and third segment rates are the first, second, and third segment rates which would be determined under section 430(h)(2)(C) (determined by not taking into account any adjustment under clause (iv) thereof) if section 430(h)(2)(D) were applied by substituting the average yields for the month described in subparagraph (C) for the average yields for the 24-month period described in such section.

26 U.S.C. §417(e).

44.     Clearly, no one, much less the average participant, could ascertain from this Code §417(e) language the interest rate or mortality table the Plan uses to compute optional lump sum pension amounts, much less how those assumptions might impact the amount of an optional pension lump sum.

45.     To add to the confusion, Gilmore advised Roche that TECO "looked back" to the August 2021 "segment rates" under Code §417(e) to compute lump sums payable in 2022, and "looked back" to the August 2022 "segment rates" under Code §417(e) to compute lump sums payable in 2023.  Ex. 7 at p2.

46.     Gilmore explained that the August 2021 "segment rates" were 0.66%, 2.50%, and 3.12%, while the August 2022 rates were 3.79%, 4.62%, and 4.69%-- significantly higher than the August 2021 segment rates.  *Id.* at pp2-3.

47.     The obvious inference from Gilmore's explanation to Roche as to how TECO computes optional pension lump sums is that the higher the segment rates utilized the smaller the lump sum and vice versa, although neither Gilmore nor TECO actually ever disclosed these facts to Roche or the other Class members.

48.     Gilmore also provided Roche with the following link, which took him to an IRS website that lists the Code §417(e) segment rates for each month from 2008 to the present:

https://www.irs.gov/retirement-plans/minimum-present-value-segment-rates/
(last visited September 11, 2024).

13

49.    However, the SPD neither provides this link nor discloses any "lookback" month for selecting segment rates for computing optional pension lump sums under the Plan, and, except for Gilmore's belated email to Roche (Ex. 7), TECO did not otherwise provide this information to participants in the Plan.

50.    Likewise, there is nothing in the SPD or Code §417(e) warning participants that if interest rates are rising and they take their lump sum in the following year it will be reduced, and TECO never otherwise informed Roche or the other participants that this would happen.

51.    Gilmore's belated email further explained to Roche that Code §417(e) permitted TECO to use the August 2021 segment rates for computing lump sums paid in 2022 and the August 2022 segment rates for computing lump sums paid in 2023 (which rates were much higher than the 2021 rates):

> *11/18/2022 email from Gilmore to Roche*
>
> . . . If your financial advisor is looking for the specific rates used under IRS Code Section 417(e)(e) [sic, (3)]: TECO selected the 4-month lookback option for the rate. This means that, for a given calendar year, the August rates from the prior year are used. In other words:
>
> For 2022, the August 2021 rates were used for lump sums. Those rated are: 0.66%, 2.50% and 3.12%. These are segment rates, meaning the first is used to discount the first 5 years of payments, the 2nd for the next 15 years and the 3rd thereafter.

> For 2023, the August 2022 rates will be used for lump
> sums: 3.79%, 4.62% and 4.69%.
>
> These rates are published on the IRS website.

Ex. 7 at p2.

52.    This information communicated to Roche that it was the higher segment rates TECO used to compute lump sums payable in 2023 that caused his lump sum to fall by over $80,000 between December 1, 2022 and January 1, 2023.

53.    However, <u>TECO never told Roche or the other Grandfathered Participants that if they retired and took their lump sum in 2023 it would be much smaller than if it were paid in 2022</u>.

54.    Furthermore, the SPD and Code §417(e) contain none of the information Gilmore discussed in her emails to Roche.

55.    In fact, page 17 of the SPD refers to a single Code §417(e) "interest rate" [not "rates", plural] and does not even remotely suggest that the Code §417(e) "interest rate" is actually a set of three "segment" rates *that change every month*.

56.    Therefore, the average participant would have no reason to even *think* he or she needed to examine Code §417(e) after reading page 17 of the SPD.

57.    But if a participant *did* examine Code §417(e), he or she would not find a list of "segment" rates or anything about a "lookback" month.

58.     The list of Code §417(e) segment rates at the link Gilmore emailed Roche does, however, reveal that (i) in 2021 and 2022 the segment rates were gradually increasing, and (ii) although the increases were small from one month to the next, over the course of a year, they became substantial.  *See again*

https://www.irs.gov/retirement-plans/minimum-present-value-segment-rates (last visited September 11, 2024).

59.     There exists an inverse relationship between the interest rate utilized to calculate the present value of a pension annuity and the resultant lump sum; that is, the higher the rate, the smaller the lump sum; the lower the rate, the larger the lump sum.

60.     Therefore, using TECO's "lookback" methodology in an increasing segment rate environment (as occurred in 2021 and 2022) would necessarily mean that a lump sum paid or payable in 2023 would be smaller than if it were paid in 2022.

61.     In Roche's case, the difference exceeded $82,000, as his lump sum check, dated January 3, 2023, equaled $400,661.11 (Ex. 8), whereas TECO estimated that his lump sum on December 1, 2022 would equal $482,970.55.  Ex. 5.

62.     As evidenced by the Plan's Form 5500 annual financial reports filed with the Department of Labor and available to the public online, TECO has long-employed highly-qualified pension professionals to provide valuation services for the Plan.  *See,*

16

*e.g.,* Schedule SB to Plan's 2021 and 2022 financial reports (Ex. 9).

63.    TECO retained Mercer as the actuarial firm for the Plan. *Id.*

64.    Mercer is one of our nation's largest providers of retirement services for pension plans. See https://www.mercer.com/en-us/solutions/retirement/ (last visited September 11, 2024)

65.    Therefore, TECO knew or should have known that the segment rates increased in 2021 and continued to increase in 2022 and, consequently, Roche and the other Grandfathered Participants would lose substantial benefits if they took their lump sums in 2023 rather than 2022.

66.    Yet, contrary to the "Prudent man standard of care" under ERISA §404(a), which requires ERISA fiduciaries to act "solely in the interest of the participants and beneficiaries"; "for the exclusive purpose of providing benefits" to them; and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," TECO did just the opposite.

67.    "Care," as used in ERISA §404(a)'s "prudent man" standard of care, elevates the fiduciary's duty to a heightened level of scrutiny and requires the prudent fiduciary to affirmatively act in a manner that protects participants and beneficiaries from foreseeable harm.

17

68.     TECO violated the statute's requirement that it act with "care" and "prudence" in matters pertaining to participants' benefits.

69.     More specifically, TECO failed to disclose its lump sum calculation methodology to Grandfathered Participants and, most importantly, <u>failed to notify Grandfathered Participants in 2022 that, due to increasing interest rates, if they retired and took their pension in a lump sum in 2023, it would be substantially smaller than if they took it in 2022</u>.  *See again* Declaration of Ellen Kleinstuber (Ex. 3 a p12) (showing the difference for 10 putative class members).

70.     TECO's failure to provide any such notice to the Grandfathered Participants was plainly contrary to its duties under ERISA §404(a) to act with "care" and "prudence" as to their benefits.

71.     In fact, other employers honored their ERISA fiduciary duties and provided such notice to their employees in 2022.

72.     For example, as reported by the Detroit Free Press, Ford issued a notice to its salaried employees in September of 2022, warning them that, due to increasing interest rates, if they retired and failed to take their pension in a lump sum before the end of they year, it would be significantly reduced.  *See* Detroit Free Press article (Ex. 10).

73.     Ford subsequently confirmed that approximately 1,000 employees elected to retire by December 1, 2022. *Id*.

18

74.    A financial analyst quoted in the Free Press article reported that his firm had "a lot of discussions with Ford clients about retiring in 2022 and taking the lump sum option," and "the main group of people who decided to take the lump sum offer were planning to retire in 2023 or 2024 anyway" but Ford's notice to them was "enough to push them over the edge to pull the trigger on retiring." *Id*.

75.    As confirmed in the emails between Roche and TECO's pension representatives (Exs. 6 and 7), if Roche had known his lump sum payable in January 2023 would be substantially smaller than if paid in December 2022, he would have ceased work and submitted his Retirement Application sooner to ensure his lump sum would be calculated as paid or payable in 2022 (i.e., using the August 2021 segment rates rather than the higher August 2022 segment rates).

76.    Putative Class member Herman G. Ouzts similarly attested that he would have done the same.  *See* Second Declaration of Herman G. Ouzts (Ex. 11).[2]

### Exhaustion of Administrative Remedies

77.    On February 23, 2023, Roche submitted a claim for additional pension benefits to the Plan Administrator (i.e., TECO) via certified mail, attaching thereto most of the Exhibits cited in this Amended Complaint (the "Claim").  Ex. 12.

---

[2] Ouzts also executed a Declaration in support of Roche's Motion for Class Certification (Doc 46-10).

78.    TECO signed the postal receipt for the Claim on February 27, 2023. Ex. 13.

79.    Under Department of Labor regulations governing ERISA claims procedures, TECO had 90 days to issue a decision on Roche's Claim. 29 CFR §2560-503-1(f).

80.    Accordingly, the administrative decision on Roche's Claim was due May 28, 2023.

81.    As of June 13, 2023 (106 days after TECO signed for the Claim), Roche had heard nothing from TECO.

82.    Therefore, on that date, Roche sent a follow-up letter to TECO by certified mail requesting that TECO immediately send him its decision on his Claim and offering to accept the decision by email. Ex. 14.

83.    Although TECO received Roche's follow-up letter on June 20, 2023 (Ex. 15), as of the date Roche filed his original Complaint in this case (7/14/2023), Roche had heard nothing from TECO about his administrative Claim.

84.    Under these circumstances, the DOL deems Roche to have exhausted the Plan's administrative remedies and entitled to pursue any remedies available under ERISA §502. 29 C.F.R. §503-1(l).

20

## Class Action Allegations

85.    Roche brings his Claim on behalf of the following individuals ("the Class"):

> All Grandfathered Participants who in 2023 received an optional pension lump sum from the Plan calculated using the Code §417(e) segment rates for August 2022.

86.    The members of the Class are so numerous that joinder is impracticable.

87.    On information and belief, the Class has at least 20 members, most of whom are unidentified, making joinder of all members impracticable.

88.    There exist questions of law or fact common to all Class members, including, without limitation, the following:

(A) Whether TECO failed to warn the Class members in 2022 that, due to increasing interest rates, if they took an optional pension lump sum in 2023 it would be substantially less than if they took it in 2022; and

(B) If so, did this violate TECO's fiduciary duties under ERISA §404(a).

89.    Roche's Claim for breach of fiduciary duty is typical of the claims of the other Class members because none received the foregoing warning and all received lump sums that were substantially less than if they had taken their lump sum in 2022.

90.    Roche will fairly and adequately represent the members of the Class and protect their interests, as his interests are coincident with, and not antagonistic to, those of the other Class members.

21

91.     In addition, the attorneys for the proposed Class are experienced in ERISA pension plan class action litigation.

92.     Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

93.     The questions of law or fact common to the Class members predominate over any questions affecting only individual Class members.

94.     Litigating Roche's Claim as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy in that the Class members injured by Defendants' conduct would not be compensated for their injuries in the absence of a class action as it would be too expensive for them to individually prosecute the Claim solely on their own behalf.

95.     Even if individual members of the Class could afford to prosecute the Claim alone, the Court would be inundated with myriad lawsuits involving identical issues.

96.     Individual litigation magnifies the delay and expense to all parties and to the court system of resolving the controversies engendered by Defendants' actions.

97.     By contrast, a class action presents fewer management difficulties and provides the benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court.

98.    Lastly, the management of this class action will not be difficult, as little contact with individual Class members will be necessary; Defendants' conduct, and not that of the Class members, represents the primary issue in this litigation.

## Claim - Violation of ERISA §404(a)

99.    Roche realleges and incorporates by reference the preceding paragraphs of this Amended Complaint as though fully restated herein.

100.    Pursuant to ERISA §502(a)(3), a participant or beneficiary may bring a civil action to "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  29 U.S.C. §1132(a)(3).

101.    Roche brings this Claim under ERISA §502(a)(3) for violation of ERISA §404(a), which governs ERISA fiduciary duties.

102.    TECO is a "named fiduciary" under the Plan and charged with "control[ing] and manag[ing]" the Plan, which makes TECO a fiduciary under ERISA, as well.  Plan §13.1, p76 (Ex. 1); 29 U.S.C. §1002(21)(A).

103.    Among TECO's listed "responsibilities" as a named fiduciary under the Plan is to perform those "duties" required "by law."  Plan §13.4, p77 (Ex. 1).

23

104.    ERISA §404(a) imposes a "Prudent man standard of care" over ERISA fiduciaries and mandates that they "discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries" and--

(A) "for the exclusive purpose of providing benefits to participants and their beneficiaries"; and

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

29 U.S.C. §1104(a).

105.    Further, case law holds that ERISA fiduciaries have a duty to notify participants of information they need to know to protect their interests in their employer-provided benefits.

106.    Here, TECO did just the opposite by failing to warn the Class members in 2022 that, due to rising interest rates, if they retired and took their lump sum in 2023 rather than 2022, it would be significantly less.

107.    Without the benefit of this material information, the Class members took their lump sums in 2023 and received substantially less than if they had retired and taken their lump sums a few months earlier in 2022.  *See* Declaration of Ellen Kleinstuber (Ex. 3, p12) (showing calculations for ten of the Class members).

108.   Plainly, TECO did not discharge its duties under ERISA §404(a) to act with "care" and "prudence" and "solely in the interest of the participants and beneficiaries."   Rather, by withholding the foregoing material information from participants, TECO acted solely in its *own* interests, as TECO contributes to the funding of the Plan and paying smaller lump sums logically reduces TECO's funding obligations.  *See* Plan §§1.3, 2.9 and 11.1 at pp 1, 3, 72 (Ex. 1).

109.   Likewise, TECO failed to act with care and prudence and for the "exclusive purpose of providing benefits to participants and their beneficiaries," as failing to warn Grandfathered Participants that their lump sums would be substantially smaller if paid in 2023 (as opposed to 2022) is inconsistent with acting with care and prudence and for such exclusive purpose.

110.   Finally, TECO did not act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

111.   A fiduciary acting with care and prudence and in the interests of participants and for the exclusive purpose of providing benefits to them would have considered that TECO gave Grandfathered Participants absolutely no information whatsoever about the Plan's lookback methodology, Code §417(e) segment rates, or the relationship between interest rates and lump sum amounts.  Therefore, in the

25

diligent exercise of care and prudence it was incumbent upon TECO to at least issue a warning to Grandfathered Participants in 2022 that, due to increasing interest rates, if they took their pension in a lump sum in 2023 it would be substantially less than if they took it in 2022.

112. TECO failed to take this most basic, bare-minimum, and logical step to protect the interests of participants and beneficiaries in their pension benefits under the Plan.

113. For all of these reasons, TECO violated its fiduciary duties under ERISA §404(a).

114. Wherefore, Roche asks this Court to issue an Order that--

(i) instructs TECO to--

> (A) re-compute his and the other Class members' optional lump sum pensions using the August 2021 segment rates;
>
> (B) order the Plan to pay him and the Class members the difference between that amount and the amount they received under the August 2022 segment rates, plus all post-judgment interest required under 28 U.S.C. §1961; and
>
> (C) order the Plan to pay him and the Class members all costs and attorneys' fees incurred in prosecuting the Claim in this lawsuit, as permitted under ERISA §502(g), 29 U.S.C. §1132(g).

(ii) equitably surcharges TECO for all pension losses he and the Class members suffered on account of TECO's fiduciary breach, as permitted under ERISA §502(a)(3), including prejudgment interest on those losses and post judgment interest as required under 28 U.S.C. §1961; and

(iii) grants any other relief the Court deems appropriate and permissible under ERISA §502(a).

115.   Roche further asks the Court to certify the proposed Class, appoint him as the Class representative, and appoint his attorneys at the law firm Hertz Schram PC as attorneys for the Class.

Respectfully submitted September 11, 2024

| | |
|---|---|
| Eva Cantarella (MI Bar No. P51917)<br>  *Lead Counsel for Plaintiff*<br>Robert Geller (MI Bar No. P34391)<br>Elizabeth Thomson (MI Bar No. P53579)<br>Hertz Schram PC<br>1760 S. Telegraph Rd.<br>Bloomfield Hills, MI 48302<br>o. 248-335-5000; f. 248-3353346<br>ecantarella@hertzschram.com<br>*Special Admission Counsel for Alejandro Roche and all others similarly situated* | Sean Estes (FL Bar No. 55770)<br>Hoyer Law Group, PLLC<br>2801 W. Busch Blvd., Suite 200<br>Tampa, FL 33618<br>o. 813-375-3702; f. 813-375-3710<br>sean@hoyerlawgroup.com<br>*Local Counsel for Alejandro Roche and all others similarly situated* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2024, I served Plaintiff Alejandro Roche's First Amended Class Action Complaint, Exhibit List, and Exhibits on all attorneys of record via the Court's CM/ECF system.

/s/ Eva Cantarella
Eva Cantarella

27