UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEJANDRO ROCHE,

    Plaintiff,

v.                                                  Case No: 8:23-cv-1571-CEH-CPT

TECO ENERGY, INC. and TECO
ENERGY GROUP RETIREMENT
PLAN,

    Defendants.
_____

## ORDER

This matter comes before the Court on Defendants', TECO Energy, Inc., and TECO Energy Group Retirement Plan, Motion to Dismiss First Amended Complaint (Doc. 68), and Plaintiff Alejandro Roche's response in opposition (Doc. 70).

In this putative class action, Plaintiff alleges that Defendants breached their fiduciary duty under section 404 of the Employment Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA"), by failing to disclose material information related to their pension plan's lump sum benefits. Doc. 64.

In an Order dated August 28, 2024 (Doc. 62, "the prior Order"), the Court dismissed the original complaint with leave to amend, finding that the allegation that Defendant failed to disclose information about the method of calculating lump sum benefits in the Summary Plan Description ("SPD") did not state a claim for a breach

of fiduciary duty. The Amended Complaint alleges a revised breach of fiduciary duty claim based on a more general duty to disclose the same information.

Upon review and full consideration, the Court will grant the motion to dismiss and dismiss the Amended Complaint with prejudice, because it still does not state a claim for breach of fiduciary duty under ERISA § 404.

I.   BACKGROUND[1]

A. Factual Allegations

In the Amended Complaint, brought on behalf of Plaintiff and other similarly situated individuals, Plaintiff alleges that he worked for TECO for approximately 33 years until December 2, 2022. Doc. 64 ¶ 7. As a participant in TECO's pension plan, Plaintiff was "grandfathered in" to an older formula for calculating benefits. *Id.* ¶¶ 9, 18-19. "Grandfathered" participants like Plaintiff may choose to receive their pension in the form of a life annuity or a lump sum. *Id.* ¶¶ 21-25. Plaintiff elected to take the lump sum. *Id.* ¶ 26.

Plaintiff informed his supervisor at some point in 2022 that he planned to retire shortly after his 65th birthday, which was August 26, 2022. *Id.* ¶ 30. On September 26, 2022, he submitted a retirement application in which he selected December 2, 2022, as his last day of work. *Id.* ¶¶ 31-32. He had contacted TECO's retirement team in early September to request an estimate of his pension benefits, but submitted the

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion, and any documents attached to the pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

retirement application before receiving a response. *Id.* ¶ 33-34. Shortly after he submitted his application, TECO sent Plaintiff three letters in response to his estimate request. *Id.* ¶ 33. The letters estimated his lump sum benefits for three different payment dates:

> December 1, 2022: $482,970.55
> January 1, 2023: $396,600.67
> February 1, 2023: $395,997.89

*Id.* ¶¶ 35, 37.

Once he received the letters, Plaintiff requested that his retirement date be set to December 1, 2022. *Id.* ¶ 39. However, TECO adhered to the policy in the plan's SPD that a retirement application must be received at least 90 days before the start of retirement benefits. *Id.*; *see also* Doc. 64-3 at 23. As a result, in January 2023, Plaintiff received a lump sum payment that was approximately $82,000 lower than it would have been if he had received it in December 2022. *Id.* ¶ 28; Doc. 64-4 at 12.

Plaintiff also requested to learn the specific methodology by which lump sum benefits were calculated, which the SPD did not disclose. Doc. 64 ¶¶ 39, 41-43, 49, 54-5. TECO informed him that it calculated lump sums by "looking back" to a certain set of interest rates (segment rates) from August of the previous year. *Id.* ¶¶ 45-46, 51. There is an inverse relationship between an interest rate used to calculate the present value of a pension lump sum and the resulting lump sum, such that a lump sum is greater when the interest rate is lower, and vice versa. *Id.* ¶ 59. Interest rates rose between 2021 and 2022. *Id.* ¶ 59. Specifically, the August 2021 segment rates, which were used to calculate lump sums paid out in 2022, were lower than the segment rates

in August 2022, which were used to calculate lump sums paid out in 2023. *Id.* ¶¶ 46, 51.  As such, the lump sum benefit a participant would receive in 2022 was higher than the benefit the same participant would receive in 2023. *Id.* ¶¶ 60, 61.

Plaintiff alleges that TECO knew or should have known that Plaintiff and other similarly situated individuals "would lose substantial benefits if they took their lump sums in 2023 rather than 2022," because it has long employed an actuarial firm to administer its pension plan. *Id.* ¶¶ 62-65.  Nonetheless, TECO provided Plaintiff with "no information whatsoever…warning him that if he took his lump sum in 2023 rather than in 2022 it would be substantially smaller." *Id.* ¶ 38.  He alleges that another employer, Ford Motor Company, issued such a warning to its employees in September 2022. *Id.* ¶ 71-74; Doc. 64-11.  If Plaintiff had known that his lump sum payable in January 2023 would be substantially lower than if it were payable in December 2022, he would have submitted his retirement application sooner to ensure it was calculated at the higher amount. Doc. 64 ¶ 75.

**C. Procedural History**

Plaintiff initiated this putative class action on July 14, 2023. Doc. 1.  He initially focused on Defendants' failure to disclose the method of calculating lump sum benefits in the SPD, alleging that it violated ERISA § 102 and breached TECO's fiduciary duty under ERISA § 404. *Id.*

The Court granted Defendants' motion to dismiss both counts of the original complaint. Doc. 62.  First, the Court found that ERISA § 102 does not require an SPD to disclose the method of calculating benefits or to warn plan participants about the

4

effect of rising interest rates. *Id.* at 11-18. Because Plaintiff's situation was not a circumstance that may result in the loss or reduction of benefits that a participant or beneficiary "might otherwise reasonably expect the plan to provide" based on the SPD's description of benefits, the SPD was not required to address it. *Id.* at 17. Finding that amendment would be futile, the Court dismissed the § 102 count with prejudice. *Id.* at 18.

Second, the Court concluded that Defendants did not breach their fiduciary duty under ERISA § 404(a) by failing to include the method of calculating lump sum benefits in the SPD. *Id.* at 19-23. The Court observed that there are some circumstances in which a fiduciary has an affirmative obligation to disclose information even without a request from the beneficiary. *Id.* However, those circumstances typically arise after an omission or misleading statement by the fiduciary, or the fiduciary's knowledge of a misunderstanding or confusion by the beneficiary. *Id.* Moreover, the Court was "unconvinced that ERISA imposes a blanket fiduciary duty to include in the SPD information that the Court has already concluded is not required by ERISA's disclosure provisions." *Id.* at 22. The Court concluded,

> Absent any allegations of misrepresentations or misleading communications by Defendants, or communications between Plaintiff and Defendants that put Defendants on notice that Plaintiff misunderstood the terms of his benefits, Plaintiff does not state a claim for breach of fiduciary duty based on the failure to disclose the plan's method of calculating lump sum benefits in the SPD.

*Id.* at 23. Because the defect was not incurable, however, the Court dismissed Count II without prejudice and with leave to amend. *Id.*

5

In his Amended Complaint, Plaintiff no longer focuses on the SPD. Doc. 64. Now, his claim of breach of fiduciary duty alleges that Defendants had a duty to "notify participants of information they need[ed] to know to protect their interests," and that Defendants breached that duty by failing "to warn the Class members in 2022 that, due to rising interest rates, if they retired and took their lump sum in 2023 rather than 2022, it would be significantly less." *Id.* ¶¶ 105, 106; *see* ¶¶ 104-113.

### D. Parties' Arguments

In their new motion to dismiss, Defendants argue that the Amended Complaint still does not state a clam for breach of fiduciary duty, because it "fails to cure the defects identified by the Court" in its prior Order. Doc. 68 at 1. Defendants argue that the Court provided leave to amend only if Plaintiff could plead "allegations of misrepresentations or misleading communications by Defendants, or communications between Plaintiff and Defendants that put Defendants on notice that Plaintiff misunderstood the terms of his benefits." *Id.* at 3, citing Doc. 62 at 23. Because the Amended Complaint does not contain any such allegations—despite the parties having completed discovery by this point—Defendants contend that it is "interdicted by this Court's motion to dismiss ruling, and the law upon which it relied." Doc. 68 at 3.

Defendants assert that the new allegations in the Amended Complaint do not constitute the type of allegations the Court found were lacking. *Id.* at 14. Plaintiff's new allegations about an actuarial firm that Defendants employed are irrelevant, since the Court already concluded that there is no general affirmative fiduciary duty to

explain the inverse relationship between interest rates and lump sum benefits, which is a universal actuarial fact. *Id.* Moreover, when Plaintiff inquired about the calculation of his lump sum benefits, Defendants promptly answered his questions and explained the methodology. *Id.* None of these allegations demonstrate that Defendants misled Plaintiff or made any misrepresentations. *Id.* at 14-15.

Second, Defendants argue that the Amended Complaint's new allegations that Ford notified its employees about the effect of rising interest rates are insufficient to show a fiduciary duty to do so. *Id.* at 15-16. Ford is one of thousands of companies that offer similar benefits, and the fact that it was undergoing significant downsizing during that period renders its circumstances distinguishable. *Id.*

Responding in opposition, Plaintiff asserts that his revised breach of fiduciary duty claim is based on Defendants' "knowing failure to warn—*not* on TECO's failure to notify participants of the impact of [ ] interest rates on optional lump sum benefits, as Defendants incorrectly assert[.]" Doc. 70 at 2 (emphasis in original). Specifically, Defendants had a fiduciary duty to warn Grandfathered participants like Plaintiff "in 2022 that increasing interest rates in that year would result in lower lump sum pension payments if they retired and elected to receive such payment in 2023 rather than 2022." *Id.* Plaintiff contrasts this allegation with his first Complaint, which alleged a breach of fiduciary duty solely based on Defendants' failure to make certain disclosures in the SPD. *Id.* at 2, 8. The prior Order's holding that the failure to make those disclosures *in the SPD* was not a breach of fiduciary duty does not mandate dismissal of the Amended Complaint. *Id.* at 8-9.

7

Highlighting the Court's finding that caselaw has required a fiduciary's knowledge of "confusion detrimental to the participant generated by its misrepresentations or its silence," Plaintiff argues that the Amended Complaint alleges exactly that. *Id.* at 10-11, citing Doc. 62 at 20. He points to the allegation that Plaintiff notified Defendants of his "confusion" over his lump sum benefit, causing them to, "belatedly (i.e., after it was too late for Roche to choose an earlier retirement date)," explain the method of calculation. Doc. 70 at 10-11.[2]

Further, Plaintiff contends that ERISA fiduciaries have an affirmative duty to "inform participants of material information needed to protect their benefits," even absent participants' request. *Id.* at 11-16. Relying on *Solis v. Current Dev. Corp.*, 557 F.3d 772 (7th Cir. 2009) and *Glaziers & Glassworkers Union Local No. 262 Annuity Fund v. Newbridge Sec.*, 93 F.3d 1171 (3d Cir. 1996), he argues Defendants were obligated to warn participants about "a known significant adverse financial impact[.]" *Id.* at 9, 11-16. Elsewhere, he argues fiduciaries must "proactively provide to participants material information that could maximize benefit outcomes," *id.* at 17, "regardless of whether or when they have inquired about their benefits." *Id.* at 18. Plaintiff challenges Defendants' characterization that this warning would constitute individualized

---

[2] Plaintiff also alleges that he attempted to use Defendants' pension calculator to estimate his lump sum benefits in July 2022, but that the calculator was unable to compute benefits beyond the end of 2022. Doc. 70 at 18, Doc. 70-1. Because this allegation is not contained in the Amended Complaint, however, it cannot be considered without converting the motion to dismiss to a motion for summary judgment.

8

unsolicited advice, and contends that a prudent fiduciary would have issued it, just as Ford did. *Id.* at 19.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

As the Court's prior Order detailed, Doc. 62 at 19-20, ERISA creates a fiduciary duty owed by administrators of employee benefit plans to participants and beneficiaries.  *See* 29 U.S.C. § 1104.  The fiduciary duty requires administrators of employee benefit plans to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries…for the exclusive purpose of providing

benefits to participants and their beneficiaries[,] and defraying reasonable expenses of administering the plan." *Id.* § 1104(a).

"ERISA requires a 'fiduciary' to discharge his obligations with respect to a plan solely in the interest of the participants and beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996). ERISA's fiduciary duties "draw much of their content from the common law of trusts." *Id.* at 496. Under the common law, "a fiduciary has a fundamental duty to furnish information to a beneficiary[, which] entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Glaziers & Glassworkers Union Loc. No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1180 (3d Cir. 1996) (quotation omitted); *see also id.* at 1182 ("[A] fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection."). Indeed, the "duty to disclose material information is the core of a fiduciary's responsibility." *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990). Accordingly, the Eleventh Circuit has acknowledged that "an ERISA plan administrator's withholding of information may give rise to a cause of action for breach of fiduciary duty." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004), citing *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1016 n.10 (11th Cir. 2003).

Plaintiff asserts that Defendants had an affirmative obligation to disclose information to Plaintiff that he had not requested under two theories. First, he argues

that his communications with Defendants put them on notice of his "confusion" about the plan. Doc. 70 at 10.  Second, he contends that Defendants had an affirmative duty to warn plan participants about information that could reduce their benefits, or, stated differently, to "proactively provide to participants material information that could maximize benefit outcomes." Doc. 70 at 17.  Each theory will be addressed in turn.

### A. Defendants' Notice of Plaintiff's Confusion

In the prior Order, the Court stated that a fiduciary's affirmative duty to inform

> arises only "if there was some particular reason that the fiduciary should have known that his failure to convey the information would be harmful"—where the fiduciary "'knew of the confusion detrimental to the participant generated by its misrepresentations or its silence.'" *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 114-15 (1st Cir. 2002), quoting *UAW v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999) (modifications accepted).

Doc. 62 at 20-21; *see also Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001) (an ERISA fiduciary "that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent[.]").

Plaintiff argues that Defendants should have known their silence would have been harmful, as in *Skinner Engine* and *Watson*, because Defendants learned of his "confusion." Doc. 70 at 10.  Specifically, he points to the allegation that he was "baffled" and "confused" after receiving the estimates of his lump sum benefits, leading to an email exchange in which Defendants' pension representatives explained how benefits were calculated. Doc. 64 ¶¶ 38-40, 44-52.

11

The allegations about Plaintiff's confusion do not help him state a claim for breach of fiduciary duty under *Watson* and *Skinner Engine*. Plaintiff argues that his confusion was only resolved when it was too late for him to choose an earlier retirement date, rendering Defendants' explanations belated. Doc. 70 at 10. But it was already too late for him to choose a 2022 retirement date by the time he alerted Defendants to his confusion. The line of cases on which the Court relied when referring to confusion in its prior Order hold that an ERISA fiduciary may be required to speak out once he knows of the confusion or misunderstanding—just as Defendants did here. *See Watson*, 298 F.3d at 114-15 (collecting cases, including *Skinner Engine*).[3] They do not create liability where Defendants learned about the confusion when it was already too late. *See Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1299 (5th Cir. 1995) ("absent a specific participant-initiated inquiry, a plan administrator does not have a fiduciary duty to determine whether confusion about a plan term or condition exists."). Accordingly, this theory does not state a claim for breach of fiduciary duty.

---

[3] Nor do the facts and holdings of *Skinner Engine* and *Watson* support Plaintiff's position. In *Skinner Engine*, 188 F.3d at 150, the court found that there was no evidence that the defendant made any affirmative misrepresentations about the duration of retirement benefits, nor that it "stood silent and failed to properly advise employees when specifically asked about the duration of benefits," even though there was a widespread misunderstanding that the benefits would be for life. The court concluded that the district court properly dismissed the breach of fiduciary duty claim. *Id.* at 151.
    Likewise, in *Watson*, 298 F.3d at 115, the First Circuit affirmed a grant of summary judgment for the employer where there was insufficient evidence to suggest that Defendants knew or should have known that the plaintiff was likely to need certain disability benefits, such that it had an affirmative fiduciary duty to inform him about those benefits. The court noted that there was also no evidence "that the information [the plaintiff] was given was in any way misleading, either directly or by omission," and it pointed out that he could have discovered his eligibility for the disability plan if he had attended an annual benefit fair or requested a full listing of all benefits for which he was eligible. *Id.* at 116.

### B. Affirmative Duty to Warn

The revised breach of fiduciary duty claim in the Amended Complaint proceeds under a new 'duty to warn' theory, which contends that an ERISA fiduciary must proactively warn participants about any circumstances that might reduce their benefits. Plaintiff primarily relies on two cases in support of this theory: *Solis v. Current Dev. Corp.*, 557 F.3d 772 (7th Cir. 2009) and *Glaziers & Glassworkers Union Local No. 262 Annuity Fund v. Newbridge Sec.*, 93 F.3d 1171, 1174-75 (3d Cir. 1996). However, neither case is analogous to the facts alleged in the Amended Complaint.

In *Solis*, 557 F.3d at 774, a benefit plan administrator was obligated under a consent decree to terminate the plans and distribute the assets to participants. Because one of the plan's assets was a piece of real property, the administrator gave participants the choice of whether to take their share in cash or a combination of cash and a stake in the property. *Id.* All but one participant opted for cash, leaving the administrator with a 97% ownership stake in the property. *Id.* He then cashed out the plan participants based on an appraisal of the land for $1.7 million. *Id.* Three weeks earlier, however, he had turned down an offer to sell the land for $2.3 million. *Id.* He did not disclose this information to the participants. *Id.*

The court found that the administrator breached his fiduciary duty to participants by intentionally undervaluing the property so that he would receive a windfall profit. *Id.* at 777. He also breached his fiduciary duty by failing to disclose his ongoing negotiations to sell the property and the offer he had received. *Id.* at 777-

78. The latter breach constituted a failure to "communicate material facts affecting the interests of beneficiaries"; the information "had a profound impact on the value of the plan's assets" because it "provided concrete evidence suggesting that the market value of the property was well above the value listed in the last appraisal[.]" *Id.* at 777-78. The court observed that if the administrator "had been forthcoming about the negotiations and made an honest valuation of the property, the plan participants would have had reliable information upon which to make their election" of cash or a combination of cash and a stake in the property. *Id.* at 778.

In *Glaziers*, 93 F.3d at 1174-75, a group of employee benefit funds sued a company called Janney, which was the former employer of the funds' investment advisor. Janney and the advisor parted ways in 1985 after Janney conducted an internal investigation into suspected improprieties in the advisor's personal investments. *Id.* at 1175. The funds decided to follow the advisor from Janney to his new firm. *Id.* at 1177. Janney complied with the funds' request to transfer their accounts to the advisor's new firm, without informing them about the investigation and the circumstances of the advisor's departure. *Id.* at 1176-77. In 1990, the funds learned that the advisor had stolen or otherwise lost millions of their assets. *Id.* at 1177. They sued Janney for breach of fiduciary duty under ERISA § 404(a) for failing to disclose the circumstances of the advisor's departure in 1985. *Id.* at 1177-78.

Assuming Janney was a fiduciary, the Third Circuit found that there was a dispute of fact as to whether it breached the fiduciary duty it owed to the funds. *Id.* at 1182. To the extent a factfinder credited Janney's account that the advisor was asked

14

to resign based upon an "unsupported suspicion of misconduct that did not appear to involve any clients' accounts," the factfinder could conclude there was no breach of duty. *Id.* at 1182.  But if the factfinder instead credited the funds' narrative that Janney "sat silently by knowing that the Funds were placing their assets under [the advisor's] control" despite knowing that his "integrity was, at best, suspect," Janney could be liable for breach of fiduciary duty. *Id.* at 1181-82.

Plaintiff particularly emphasizes *Glaziers*' holding, taken from the Restatement of Torts, that "a fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." 93 F.3d at 1182.  Namely, the fiduciary must disclose "what a reasonable fiduciary, exercising 'care, skill, prudence and diligence,' would believe to be in the best interest of the beneficiary to disclose." *Id.*

Although the general rules contained in *Solis* and *Glaziers* are accurate statements of the law, their facts are not analogous to the instant case.  It is significant that the defendants in both cases were on notice of the need to provide information that the plaintiffs had not requested.  In *Solis*, the defendant was aware that the beneficiaries were choosing to receive cash instead of a stake in the land based on an outdated valuation of the land, and he failed to share the updated valuation so that he would receive a windfall profit. 557 F.3d 772.  And in *Glaziers*, the defendant knew that the plaintiffs were following the advisor to his new firm—by the fact that the defendant was directed to transfer plaintiffs' accounts to that firm—but chose not to disclose the circumstances of the advisor's departure. 93 F.3d 1171.  Given these

15

factual distinctions, the Court does not find that *Solis* and *Glaziers* stand for the blanket rule, advocated by Plaintiff, that "ERISA fiduciaries have a duty to communicate material facts to participants," Doc. 70 at 12, even without some communication or other event that puts the fiduciary on notice about the need for disclosure. *See Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993) ("once an ERISA beneficiary *has requested information* from an ERISA fiduciary *who is aware of the beneficiary's status and situation*, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance," even if that information goes beyond the beneficiary's request) (emphasis added); *see also Krohn v. Huron Mem. Hosp.*, 173 F.3d 542 (6th Cir. 1999); *Eddy v. Colonial Life Ins.*, 919 F.2d 747 (D.C. Cir. 1990) (same).

Plaintiff asserted at the oral argument that Defendants were put on notice of the need to disclose information by their knowledge that: a) rising interest rates would reduce the lump sum benefit grandfathered participants would receive if they retired in 2023 instead of 2022, and b) every year, some grandfathered participants opted to take a lump sum instead of an annuity. From those two pieces of information, Plaintiff argues, Defendants should have known that those participants were at risk of harm, and had a duty to warn them of that risk.

But, absent *any* communication or notice from participants, the Court is unconvinced that Defendants had a duty: 1) to anticipate the dual possibility that participants were considering retirement in 2022 or 2023 and would opt to receive a lump sum benefit rather than a lifetime annuity; and then, 2) to notify them that,

because interest rates were rising, the amount of their lump sum benefit would be lower if they retired in 2023 than in 2022. Although Plaintiff professes that he does not advocate for the provision of unsolicited individual advice, Doc. 70 at 19,[4] the duty he proposes is not very different from that. Indeed, his theory that ERISA plan administrators must "proactively provide to participants material information that could maximize benefit outcomes," Doc. 70 at 17, seems to equate plan administrators with investment advisors. *Cf.* 29 U.S.C. § 1002(21)(A) (differentiating between plan administrators and investment advisors when defining ERISA fiduciaries). This is particularly true where the material information he argues Defendants should have provided is not a feature of the plan itself, but consists of external factors: rising interest rates and a universal actuarial fact. *See Allen v. Wells Fargo & Co.*, 967 F.3d 767, 775 (8th Cir. 2020) (noting that the cases cited for the proposition that a plan fiduciary must disclose material information each "involved information about the plan," rather than the non-public information about the employer that the beneficiary argued must be disclosed).

In *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 207 (1st Cir. 2002), the First Circuit emphasized the distinction between an ERISA plan administrator's fiduciary duties and that of a personal trustee:

> If this case involved a traditional trustee responsible for managing the financial interests of an individual beneficiary, [the plaintiff's]

---

[4] *See, e.g.*, *Barrs v. Lockheed Martin Corp.*, 287 F.3d 202, 207-08 (1st Cir. 2002) (collecting cases, observing, "[a]bsent a promise or misrepresentation, the courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances.").

17

>   demand for personalized information would have some basis. *See* Restatement (Second) of Trusts § 173 cmt. d (1959). However, under ERISA the administrator is not a personal trustee but rather a fiduciary for the limited purpose of overseeing whatever plan it creates for what may be thousands of employees and other beneficiaries. *See* 29 U.S.C. § 1002(21)(A)(iii). Ordinary trust principles cannot be transferred wholesale, and, where ERISA itself specifies a notice requirement, courts must be especially cautious in creating additional ones.

Here, even though the unsolicited notice Plaintiff seeks is not individualized, the Court finds it is better suited to the obligations of a personal trustee or investment advisor than an ERISA plan administrator.

While Plaintiff's circumstances are sympathetic, the Court declines his invitation to expand the fiduciary duty of an ERISA plan administrator so far beyond its current state. The Amended Complaint does not allege that Defendants made misrepresentations or misleading communications to Plaintiff and the putative class members, nor that they were on notice of the need for disclosure under the specific circumstances of Plaintiff and the putative class. Accordingly, it does not state a claim for breach of fiduciary duty under ERISA § 404(a). Defendant's motion to dismiss is due to be granted.

Accordingly, it is **ORDERED**:

1. Defendants TECO Energy, Inc., and TECO Energy Group Retirement Plan's Motion to Dismiss First Amended Complaint (Doc. 68) is GRANTED.

2. The Amended Complaint is dismissed, with prejudice.

3. The Clerk is directed to CLOSE this case.

**DONE** and **ORDERED** in Tampa, Florida on May 20, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties